IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN DURIN | ) | |
| | ) | |
| Plaintiff, | ) | No.   21 cv 50206 |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| KISHWAUKEE COMMUNITY COLLEGE and LAURIE BOROWICZ | ) ) | PLAINTIFF DEMANDS TRIAL BY JURY |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Steven Durin, (hereinafter referred to as "Durin" or "Plaintiff") by and through his attorneys, John C. Kreamer and Joseph E. Urani of The Kreamer Law Group, and in complaining of Defendant, KISHWAUKEE COMMUNITY COLLEGE ("Kishwaukee"), and LAURIE BOROWICZ ("Borowicz") states as follows:

## NATURE OF THE CLAIM

1.  This case seeks redress for violations of the Family Medical Leave Act and other statutory and common law theories of recovery.

## PARTIES

2.  Durin is a citizen of Illinois and a resident of Ogle County, Illinois.

3.  Durin was at all relevant times employed by Defendant as an Agriculture Instructor.

4.  Defendant Kishwaukee is a public community college located in Malta, DeKalb County, Illinois.

5.  Defendant Borowicz is the President of Kishwaukee Community College and is a resident of Illinois.

## JURISDICTION AND VENUE

6.  Jurisdiction of this Court is invoked under 28 U.S.C. §1343(a)(3) and (4), 28 U.S.C. §1331, and 29 U.S.C. §2601. *et seq.*

1

7.	The venue is proper in the Northern District of Illinois under 28 U.S.C. §1391(b) and (d). The unlawful employment practices alleged were and are now being committed in the Northern District of Illinois.

## STATEMENT OF FACTS

8.	Durin commenced his employment with Defendant Kishwaukee on or about August 1, 1993.

9.	At all relevant times, Kishwaukee employed at least 50 people within a 75-mile radius of Malta, Illinois location and was, therefore, subject to the FMLA.

10.	The FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons by continuing group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

11.	The FMLA entitles an eligible employee up to twelve weeks of leave during twelve months if the employee has a serious health condition rendering him unable to perform the functions of his position. 29 U.S.C. §2612(a)(1)(D).

12.	The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of a right created by the FMLA. 29 U.S.C. §2615(a)(1).

13.	To recover on his FMLA interference claim, a Plaintiff must show that: "(1) [he] was eligible for FMLA protection; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to take leave under the FMLA; (4) [he] provided sufficient notice of [his] intent on taking FMLA leave; and (5) [his] employer denied [him] the right to FMLA benefits." *Nicholson v.Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012).

14.	A plaintiff satisfies the first four elements where the employer has granted her FMLA leave. *Goelzer v. Sheboygan County, Wis.* 604 F.3d 987, 993 (7th Cir. 2010).

15.	In alleging an FMLA retaliation claim, a plaintiff must show that she engaged in a statutorily protected activity, suffered an adverse employment action, and that there is a causal link between the two. *King v. Ford Motor Co.,* 872 F.3d 833, 841 (7th Cir. 2017).

16. Section 2612(a)(2) of the FMLA states that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice" prohibited by the FMLA. 29 U.S.C. §2615(a)(2).

17. Similarly, the FMLA makes it unlawful for an employer to "discharge" or "discriminate" against an individual for taking part in proceedings or inquiries under the FMLA. 29 U.S.C. §2615(b).

18. Regulations explain that an employer is "prohibited from discharging or in any other way discriminating against any person . . . for opposing or complaining about any unlawful practice under the Act. 29 C.F.R. §825.220(a)(2).

19. Prohibited Acts sets forth that "it shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual – (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; (2) has given, or is about to give, information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified or is about to testify in any inquiry or proceeding relating to any right provided under this subchapter. 29 U.S.C. §2615 (b)(1), (2), and (3).

20. To determine causation between an FMLA-protected activity and an adverse action, the Court will "consider the evidence as a whole and ask whether a reasonable jury could draw an inference of retaliation." King, 872 F.3d at 842 (citing *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 764-66 (7th Cir. 2016))

21. Evidence of causation may include factors such as suspicious timing, ambiguous statements suggesting retaliatory intent, evidence that the formal reason for termination was pretextual, or disparate treatment of similarly situated colleagues. *Pagel v. TIN Inc. 695 F.3d 622, at 631*.

22. Statements from which retaliation can be inferred, evidence of pretext, and evidence of other employees' differential treatment are all relevant. *Jajeh v. City of Cook*, 678 F.3d 560, 570 (7th Cir. 2012).

23. The Seventh Circuit analyzes these FMLA discrimination claims under the rubric of retaliation. *Nicholson v.Pulte Homes Corp.*, 690 F.3d at 825. It evaluates them in the same way that

retaliation claims under other employment statutes are evaluated. *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir. 2004).

24. The Department of Labor has consistently taken the position that 29 U.S.C. §2614(a)(4) means that terms set forth in a collective bargaining agreement, whether providing greater or fewer protection to employees that are explicitly set forth in the Family Medical Leave Act, take precedence over the statutory protections provided to employees in the FMLA. *Harrel v. United States Postal Serv.* 445 F.3d 913; *Bhd. Of Maint, of Way Emples v. CSX Transp., Inc. 2005 US Dist. Lexis 37950; and Valentino v. Wickliffe City School District Board of Education* 2010 Ohio 5515.

25. Any employer who violates this Section shall be liable to any eligible employee affected for compensatory damages and for such equitable relief as may be appropriate, including employment, reinstatement, and promotion. 29 U.S.C. §2617 (a) (1).

26. On or about July 12, 2017, the 2017-2022 Kishwaukee's CBA agreement with the Union was signed, voted, and ratified.

27. Section 8.5 Family and Medical Leave Act of 1993 of the CBA provides,

> 'The parties agree that the College may adopt policies to implement the Family and Medical Leave Act of 1993 ("FMLA") that are in accord with what is legally permissible under the FMLA. A twelve (12) month period for purposes of the FMLA shall be defined as the twelve (12) month period measured forward from the first day the employee uses FMLA leave. FMLA guidelines can be found on: www.dol.gov/whd/fmla. In addition, the College will agree (per an MOU) to provide annual in-service workshops on FMLA for faculty, supervisors, and administrators during the fall semester.'

28. Section 8.1 Sick Leave of the CBA provides,

> 'Sick leave shall be interpreted to mean personal illness, temporary disability due to pregnancy and/or childbirth, adoption, quarantine at home, or serious illness or death of the immediate family or household. Immediate members of the family shall be interpreted to mean spouse, son, daughter, mother, father, grandparent, grandchild, brother, sister, or corresponding in-law. For bereavement purposes only, an employee's uncle and aunt shall also be considered immediate family.
>
> The annual sick leave shall be fifteen (15) days per regular academic year, which shall only be credited at the beginning of a regular academic year, provided a faculty member has not already reached the maximum sick leave accumulation permitted under this Section. Sick leave for 9-month bargaining unit employees

> shall be taken in a minimum of one (1) hour blocks and deducted by minutes of missed time, rounding up to the next hour, to a maximum of eight (8) hours per day. (Example: Unit employee missed two (2) fifty (50) minute classes (1.67 hours) and will be charged two (2) hours of sick time).
>
> Up to two (2) days of accumulated sick leave may be used during the summer term by non-twelve (12) month faculty teaching summer classes. These two sick days shall not be applied to supplemental days. Faculty who have completed less than fifteen (15) years of continuous full-time service at Kishwaukee College may accumulate unused sick leave up to a maximum of 365 days.
> The Board reserves the right to require a certification from a physician or other licensed healthcare professional for the use of sick leave. The Board reserves the right to require periodic physical examinations during the period of an employee's absence due to sickness or disability. Examinations administered by a physician at the Board's request shall be at the Board's expense.'

29. Section 8.2 Personal Leave of the CBA provides,

> 'Three (3) days of a faculty member's fifteen (15) sick leave days provided in the immediately preceding Section may be used as personal leave days. A faculty member may use personal leave days for personal business without being required to specify a reason to the Board or its designee, providing the faculty member provides prior written notification to the appropriate immediate non-bargaining unit supervisor for such leave. Personal leave days shall be non-cumulative. It is further agreed that non personal leave day(s) shall be taken on a work day immediately before or after a vacation day or a college holiday, unless otherwise agreed by the Board or its designee. Personal leave days are not intended by the parties to be used as vacation days.'

30. On or about June 15, 2018, Durin was diagnosed with esophagectomy at Mayo Clinic. Durin received health benefits through Kishwaukee, who was self-insured.

31. Two months later, on or about August 16, 2018, Durin presented Defendant with a letter from Mayo Clinic recommending a modified work schedule.

32. Thereafter, on or about October 5, 2018, Durin met with Kishwaukee's Associate Dean of CT to discuss plans for a reduced load for the second eight weeks of the fall semester.

33. One month later, on or about November 16, 2018, Durin met with Kishwaukee's Executive Dean of CT to discuss a reduced load for the spring semester.

34. On or about December 21, 2018, Durin submitted medical leave documentation from the Mayo Clinic to Defendant recommending a reduced load for the Spring 2019 semester.

35. On or about January 3, 2019, Durin met with Defendant's HR Personnel to provide his reduced load medical documentation from the Mayo Clinic.

36. On or about January 9, 2019, Durin met with the Defendant's Vice President of Instruction, the Executive Dean, and HR employees to discuss what he thought was his reduced load for the Spring semester. However, at this meeting, Durin was told that Defendant Borowicz had placed him on full-time medical leave for the first time. Durin objected to being placed on full-time medical leave as he was capable of working a reduced load, but he was told that it was the College's President, Laurie Borowitcz's decision. Durin was told that Defendant Borowitcz's decision not to allow Durin to work a reduced load was final and that if he returned to work for the Spring 2019 semester, he would need to teach a full course load. No further explanation was provided despite Durin's request for the same.

37. A few days later, on or about January 13, 2019, Durin re-submitted his Mayo Clinic letter to Defendant again requesting a reduced load in the Spring Semester and asked for an explanation why he was being placed on full-time medical leave.

38. On or about January 22, 2019, Durin met with Defendant's HR Administrators requesting information from Defendant on several topics, including leave of absences, FMLA, the responsibilities of the leave of absence, and why he was not allowed to work a reduced load. Defendant ignored Durin's requests.

39. On or about January 23, 2019, Durin emailed Defendant's HR Administrators again requesting information from Defendant on the details/requirements of his medical leave.

40. On or about January 24, 2019, Durin received an email from Defendant's HR Administrators stating that medical leave paperwork would be forthcoming, but nothing was provided.

41. On or about January 25, 2019, Durin emailed a request for a meeting with the Defendant's HR's College Administrators to clarify his medical leave for the spring semester. That same day, Durin received an email response stating that HR would reach out to provide Durin the details of his medical leave, but no details were provided.

42. In and around February 2019, Durin filed a complaint with the Department of Labor regarding the Defendant violating his FMLA rights. Durin informed the Defendant of the same.

43. On or about February 26, 2019, Durin again emailed Defendant's HR Department Personnel requesting the status and clarification of his medical leave. Defendant failed to respond.

44. On or about March 15, 2019, Durin sends yet another email to Defendant's HR Department, repeating his prior requests for status and clarification of his medical leave. Durin did not receive a response.

45. On or about March 19, 2019, Mindy Lange of the Defendant's HR Department informs Durin that their HR Department is still working on the details of his leave and that Lindsey Drew will be taking over the leave of absence documentation.

46. On or about March 26, 2019, Durin receives an email from Defendant's HR Department asking that he backdate the College's FMLA paperwork. Durin refused to backdate the forms and informed the Defendant that doing so was improper. Durin informs the Defendant that the Department of Labor takes the position that backdating federal FMLA forms is illegal.

47. On or about April 8, 2019, Durin emails a request for information for clarification of his sick leave time.

48. At the direction and approval of Defendant Borowicz, on or about April 15, 2019, Durin received an email from Cindy McCluskey of the HR Department setting forth a calculation of sick leave Durin was entitled to and how they were calculating the same. The Defendants' calculation of FMLA sick leave benefits continued to change through July 2019 but was consistently lower than what should be awarded.

49. Specifically, the Defendants intentionally targeted Durin for exercising his FMLA rights and benefits provided to him under the CBA agreement and willfully violated Durin's leave benefits where they illegally calculated Durin's usage of sick leave being one full day (eight hours) of sick time used for each day of his leave, adding up to forty hours of sick leave used per week. In reality, Durin

7

should have deducted sick leave at the hour-for-hour rate based on his on-campus obligations. As a result, Durin informs the Defendants that he planned to file a grievance with the Union under the CBA.

50. On or about April 18, Durin filed a labor grievance to enforce his FMLA sick leave benefits under the CBA. The Defendant's representatives met with Durin and his Union Representative on June 20, 2019, July 8, 2019, and August 1, 2019, for Steps One-Three of the grievance procedures. At the direction of Defendant Borowicz, at each step, Durin's FMLA full sick leave benefits were denied forcing Durin to file for Arbitration – the fourth step of the grievance procedure and ultimately to retire early.

51. On February 1, 2021, Arbitrator Peter R. Meyers ruled in Durin's favor finding that the Defendant violated Durin's FMLA sick leave benefits where the Defendant deducted forty hours of sick leave time per week from the Grievant's accumulated sick leave time while on FMLA leave. The Arbitrator ordered the Defendant to recalculate Durin's usage of sick leave time during his FMLA medical leave in accordance with the hour-for-hour rate set forth in Section 8.1 of the parties' current Agreement and credit back to Durin all sick time improperly deducted from his accrued earned sick time.

52. The Defendants' intentional retaliatory misconduct against Durin has continued where the Defendants refuse to comply with the Arbitrator's order and is now attempting to make further illegal deductions to Durin's FMLA sick leave benefits and is currently denying Durin an additional 48 days of sick leave benefits.

53. The Defendants' illegal acts were done in retaliation to Durin exercising his FMLA sick leave rights under the CBA and for reporting the Defendant to the Department of Labor. 54. Ultimately, the Defendants' goal was to force Durin to retire since he was causing the Defendant to incur added costs under its self-insured health benefits plan. In fact, Defendant Borowicz put together a "target" or "hit" list of select employees that they wanted to force out or retire. Durin's name was placed on her "hit" list.

54. As a result of Defendant's willful misconduct, on or about July 30, 2020, Durin was forced to give notice to the Defendants of his intent to take early retirement in violation of the common law prohibiting retaliatory discharge. Durin's retirement is set to commence on or about June 30, 2021.

55. Durin's FMLA rights to intermittent leave continue to be violated up and through the current date.

56. The Tort Immunity Act provides that a public employee is not liable for his act or omission in the execution or enforcement of any law unless such Act or omission constitutes willful and wanton conduct. *Doe v. Calumet City* 161 Ill.2d 374.

57. The Tort Immunity Act only provides immunity to torts, not to constitutional claims or claims for injunctive relief. *People ex rel. Birkett v. City of Chicago,* 325 Ill.App.3d 196, 259 Ill.Dec. 180, 758 N.E.2d 25, 2001 Ill.App. LEXIS 930 (Ill.App. Ct. 2nd Dist. 2003).

58. The Tort Immunity Act is in derogation of the common law action against local public entities and must be strictly construed against the public entity involved. *Aikens v. Morris*, 145 Ill.2d 273, 164 Ill.Dec. 571, 583 N.E.2d 487.

59. The judicially created special duty exception and the statutory willful and wanton exception are separate and distinct exceptions to municipal and officer liability. *Doe v. Calumet City* 161 Ill.2d 374, 388-389.

60. A plaintiff can escape the statutory immunities granted municipalities and their employees either by proving facts that show the existence of a special duty and proving simple negligence or by proving willful and wanton conduct alone. *Id*.

61. Conduct is of an extreme and outrageous character where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' Id., citing, (Restatement (Second) of Torts §46, Comment d, at 73 (1965).

62. The extreme and outrageous character of the conduct can arise from the abuse of a position of power. Id., citing *Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill.2d 1, 21, 180 Ill. Dec. 307, 607 N.E.2d 201.

63. Section 15-10 of the Illinois Ethics Act prohibits "a State Employee" or a State agency which includes the Defendants, from retaliating against another state employee for protected activity. 5 ILCS 430/15-10.

64. A violation of article 15 of the Ethics Act occurs where a state employee engages in protected activity and establishes that such conduct "was a contributing factor in the retaliatory action alleged by the State employee." *Crowley v. Watson* 2016 Ill.App. (1st) 142847, citing 5 ILCS 430/15-20.

## COUNT I – FMLA INTERFERENCE AGAINST ALL DEFENDANTS

65. Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

66. Defendant Kishwaukee holds itself out as an employer covered by the Family Medical Leave Act under 29 U.S.C. §2601 *et. seq.*

67. Durin was entitled to take intermittent leave to reduce his work schedule for his serious health condition, cancer.

68. The Defendants intentionally interfered with Durin's FMLA rights by denying him intermittent leave from January 2019 through the present date.

69. The Defendants intentionally interfered with Durin's accrued FMLA sick leave benefits.

70. The Defendants intentionally interfered with Durin's FMLA rights by asking him to backdate his FMLA paperwork.

71. The Defendants intentionally interfered with Durin's FMLA rights by pressuring Durin to return to work full-time.

72. The Defendants intentionally interfered with Durin's FMLA rights by forcing Durin to take early retirement. Specifically, on or about July 30, 2020, he was forced to notify Defendant of his intent to take early retirement. Durin's retirement is set to commence on or about June 30, 2021.

73. The Defendants intentionally interfered with Durin's FMLA rights by placing him on a "target" or "hit" list to be terminated, forced to quit, or retire.

74. The Defendants intentionally interfered with Durin's FMLA rights by misleading Durin about his rights under FMLA, ignoring his inquiries, and falsifying FMLA information and sick leave information to Durin.

75. The Defendants' actions were willful and in bad faith.

76. As a result of the Defendants' FMLA interference, Durin has suffered damages including but not limited to past lost wages and interest on those wages, paid sick leave, forced early retirement, liquidated damages, front pay, loss of fringe and pension benefits, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, loss of ordinary pleasures of everyday life including the right to pursue gainful employment of his choice, attorney fees, and costs.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his rights under FMLA and award Durin all allowable damages under FMLA, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT II - FMLA DISCRIMINATION AGAINST BOTH DEFENDANTS

77. Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

78. Defendants intentionally harassed Durin for taking FMLA sick leave from January 2019 through the present.

79. Defendants knew or should have known that their actions were harassing Durin.

80. Defendants did nothing to stop the harassment.

81. Defendants harassed Durin by denying him FMLA intermittent leave from January 2019 through the present date.

82. Defendants harassed Durin by denying him his accrued FMLA sick leave benefits.

83. Defendants harassed Durin by asking him to backdate his FMLA paperwork.

84. Defendants harassed Durin by pressuring him to return to work full-time.

85. Defendants harassed Durin by forcing Durin to take early retirement. Specifically, on or about July 30, 2020, he was forced to notify Defendant of his intent to take early retirement. Durin's retirement is set to commence on or about June 30, 2021.

86. Defendants harassed Durin by placing him on a "target" or "hit" list to be terminated, forced to quit, or retire.

87. Defendants harassed Durin by misleading Durin regarding his rights under FMLA, ignoring his inquiries, and falsifying Durin's FMLA information and sick leave information.

88. The Defendants' actions were willful and in bad faith.

89. As a result of the Defendants' FMLA harassment, Durin has suffered damages including but not limited to past lost wages and interest on those wages, paid sick leave, forced early retirement, liquidated damages, front pay, loss of fringe and pension benefits, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, loss of ordinary pleasures of everyday life including the right to pursue gainful employment of his choice, attorney fees, and costs.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his rights under FMLA and award Durin all allowable damages under FMLA, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

**COUNT III - COMMON LAW RETALIATION - CONSTRUCTIVE DISCHARGE AGAINST BOTH DEFENDANTS**

90. Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

91. Durin was harassed, denied benefits, and forced to take early retirement in violation of the common law prohibition of retaliatory discharge.

92. Durin repeatedly complained and filed a CBA Union Grievance.

93. After making these complaints and pursuing his Union Grievance, Durin was harassed, including but not limited to differential treatment toward Durin, creation of a hostile work environment, and forced retirement.

94. In response to Durin's intent to pursue his common law and statutory rights, on or about July 30, 2020, he was forced to give notice to the Defendants of his intent to take early retirement in violation of the common law prohibits of retaliatory discharge. Durin's retirement is set to commence on or about June 30, 2021.

95. Defendants forced Durin's early retirement in violation of the clear mandate of his federally and state-protected rights to equal treatment in the workplace.

96. As a result of his forced early retirement, Durin has suffered damages including but not limited to past lost wages and interest on those wages, paid sick leave, forced early retirement, liquidated damages, front pay, loss of fringe and pension benefits, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, loss of ordinary pleasures of everyday life including the right to pursue gainful employment of his choice, attorney fees, and costs.

97. Defendants' actions were willful and wanton and were conducted with the intended purpose of causing harm to Durin. As such, Durin is entitled to punitive damages and any other damages allowable under common law retaliation.

98. The damages set forth above were the direct and proximate result of the harassment and forced retirement Durin suffered.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his Illinois common law rights and award Durin all allowable damages, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities,

loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

**COUNT IV – VIOLATION OF THE ILLINOIS ETHICS ACT AGAINST BOTH DEFENDANTS**

99. Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

100. The Illinois Ethics Act provides in relevant part: An officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee because the State employee does any of the following:

> (1) Discloses or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of any officer, member, State agency, or other State employee that the State employee reasonably believes is in violation of a law, rule, or regulation.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by any officer, member, State agency, or other State employee.
>
> (3) Assists or participates in a proceeding to enforce the provisions of this Act. Section 15-10 Protected activity of the Illinois Ethics Act.

101. Durin engaged in conduct described in Section 1510, and that conduct was a contributing factor in the retaliatory action alleged by Durin.

102. The Defendants would not have taken action against Durin but for his protected conduct under the Illinois Ethics Act.

103. As a direct and proximate result of the acts engaged in by Defendants, Durin was caused to suffer severe damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe employment distress, humiliation, embarrassment; damage to reputation, costs, and other damages allowed under the Illinois Ethics Act including reinstatement of the employee to either the same position held before the retaliatory action or to an equivalent position; two times the

amount of back pay; interest on the back pay; the reinstatement of full fringe benefits and seniority rights; and the payment of reasonable costs and attorneys' fees.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his Illinois common law rights and award Durin all allowable damages, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

### COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BOTH DEFENDANTS

104. Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

105. The Defendants' conduct was extreme and outrageous.

106. The Defendants had actual or apparent authority over Durin.

107. The Defendants intended to cause or recklessly or consciously disregarded the probability of causing emotional distress. Defendants' actions were willful and wanton in nature and were conducted with the intended purpose of causing harm to Durin.

108. The Defendants' conduct caused the Durin to suffer fright, grief, worry, shame, humiliation, and severe or extreme emotional distress. Defendants' conduct further created an intimidating, hostile, and offensive work environment, which unreasonably interfered with Durin's work performance, caused Durin to be extremely fearful.

109. The Defendants' conduct actually and proximately caused emotional distress and proximately caused the Plaintiff to suffer injuries, including injuries to his reputation.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his Illinois common law rights and award Durin all allowable damages, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

### COUNT VI – VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT AGAINST BOTH DEFENDANTS

110.  Durin hereby re-alleges and adopts the allegations set forth in paragraphs 1-64 above as though set forth herein.

111.  At all relevant times, there was a statute in the State of Illinois known as the Illinois Whistleblower Act, cited as 740 ILCS 174/1, *et. seq.*

112.  In particular, 740 ILCS 174/20 provides in relevant part: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Family Medical Leave Act.

113.  In addition, 740 ILCS 174/20.1 prohibits an employer from retaliating against an employee for disclosing or attempting to disclose public corruption or wrongdoing.

114.  Defendant was an "employer" within the definition of the Act.

115.  Durin was an "employee" within the definition of the Act.

116.  The preceding acts of Defendants violated the Illinois Whistleblower's Act in that the Defendants retaliated against Durin for his refusal to participate in an activity that he had a reasonable, good-faith belief to be illegal that violated both state and federal law and regulations, including but not limited to deceptive practices.

16

117. The preceding acts of Defendants violated the Illinois Whistleblower's Act in that the Defendants retaliated against Durin for disclosing or attempting to disclose public corruption or wrongdoing under the law.

118. In particular, Defendants retaliated against Durin and ultimately forced Durin to retire.

119. As a result of the discharge, Durin was severely damaged, including but not limited to the following ways: lost numerous employment benefits such as yearly salary, personal time, vacation time, holiday pay, vision insurance, health insurance, and money for Plaintiff's pension.

120. The reasons set forth above were the direct and proximate cause of Durin's discharge and resulting damages.

WHEREFORE, the Plaintiff, STEVE DURIN, respectfully requests judgment against Defendants in an amount in excess of $75,000.00 that will fully compensate him for his injuries and damages caused by the Defendants' violations of his Illinois common law rights and award Durin all allowable damages, which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY**

        Respectfully submitted,
        STEVE DURIN

        By: /s/ John C. Kreamer /s/
            One of His Attorneys

John C. Kreamer, 6270111
Joseph E. Urani #6278626
Kreamer Law Group, LLC
1100 East Warrenville Road
Suite 135
Naperville, IL 60563